HOUSE OF ADLER, INC., ET AL., PLAINTIFFS, *v.* UNITED STATES, DEFENDANT

Court No. 78-9-01715

Before WATSON, *Judge.*

(Dated December 16, 1981)

*Glad, White & Ferguson (Edward N. Glad* at the trial and on the briefs) for plaintiffs.

*J. Paul McGrath*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Jerry P. Wiskin* at the trial and on the brief), for defendant.

WATSON, *Judge:* This action challenges the valuation of diamonds, precious and semi-precious stones, jade and other jewelry items which were exported from Hong Kong in the years 1972 through 1974. The exportations were made by the House of Adler, Ltd., in Hong Kong (Adler Hong Kong) and were imported for its parent corporation, House of Adler, Inc. (Adler U.S.). They were entered at the Port of Honolulu.

All the merchandise was appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, *as amended by* the Customs Simplification Act of 1956, (19 U.S.C. 1401a(b) (1976)).[1] For the most part the loose diamonds were appraised at the invoiced unit values plus 45 percent, packed.[2] The other stones and jewelry were appraised at the invoiced unit values, less 13.04 percent, plus 20 percent, plus commission, packed.

Plaintiffs first claim that the correct export value should be the invoiced values, less ocean freight and insurance, plus 1½ percent for the loose diamonds or 15 percent for the remaining merchandise. Alternatively, plaintiffs claim valuation under United States Value as provided in section 402(c) of the Tariff Act of 1930, *as amended supra* (19 U.S.C. 1402a(c) (1976))[3] at a value equal to the invoiced unit values less any included ocean freight and insurance, packed.

---

[1] (b) For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

[2] In Entry No. 113521 they were appraised at invoiced unit values less ocean freight and insurance, plus 45 percent. In Entry No. 107634 they were appraised at invoiced unit values, plus 45 percent, plus commissions, packed.

[3] (c) For the purposes of this section, the United States value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal market of

At the trial, the plaintiffs offered the testimony of Jacques H. Adler, who is both the president of Adler U.S. and the Chairman of Adler Hong Kong and Gerard J. Grenier, a director and treasurer of Adler U.S., and its chief financial officer. Plaintiffs also offered the affidavit of Mary Hu Chao Sze Leung, the general manager of Adler Hong Kong during the relevant period. In addition, plaintiffs introduced in evidence two sets of interrogatories answered by the defendant.

From the answers to the interrogatories, it appears that the appraisement was predicated on a finding that Adler Hong Kong was selling such or similar merchandise to unrelated purchasers. However, from the testimony and other evidence it is clear that Adler Hong Kong made no such sales and only conducted export transactions with Adler U.S. The purpose of these transactions was to return to Adler U.S. a variety of stones and jewelry which had been accumulated in Hong Kong after the closing of numerous Far Eastern branches of Adler U.S.

The price of the transaction by which they were returned to Adler U.S. was arrived at by a formula devised by Mr. Adler and designed to compensate Adler Hong Kong for handling: To the price at which Adler U.S. had originally acquired these items from Belgium or elsewhere was added $1\frac{1}{2}$ percent for loose diamonds and 15 percent for the remainder.

The argument by plaintiff that export value is represented by the prices of the transaction between Adler Hong Kong and Adler U.S. is unacceptable. Although the price between the two may have been a genuine attempt to approximate a market value, considering the unity of control and the entirely synthetic manner in which the price was set, there could be no export value derived from the transaction itself. See *D. H. Baldwin Co. et al.* v. *United States*, 65 CCPA 67, C.A.D. 1208, 577 F. 2d 704 (1978).

At this juncture it is plain that the government was wrong to base an export value on sales by Adler Hong Kong to other unrelated

the United States for domestic consumption, packed ready for delivery, in the usual wholesale quantities and in the ordinary course of trade, with allowances made for—

(1) any commission usually paid or agreed to be paid, or the addition for profit and general expenses usually made, in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement;

(2) the usual costs of transportation and insurance and other usual expenses incurred with respect to such or similar merchandise from the place of shipment to the place of delivery, not including any expense provided for in subdivision (1) of this subsection; and

(3) the ordinary customs duties and other Federal taxes currently payable on such or similar merchandise by reason of its importation, and any Federal excise taxes on, or measured by the value of, such or similar merchandise, for which vendors at wholesale in the United States are ordinarily liable.

If such or similar merchandise was not so sold or offered at the time of exportation of the merchandise undergoing appraisement, the United States value shall be determined, subject to the foregoing specifications of this subsection, from the price at which such or similar merchandise is so sold or offered at the earliest date after the importation of the merchandise undergoing appraisement.

purchasers and plaintiffs are wrong to think that the transaction between Adler Hong Kong and Adler U.S. could generate an export value.

This leaves plaintiffs' alternative claim for the use of United States value, which is used when no export value exists. However, defendant argues that plaintiffs have introduced evidence which proves that an export value did indeed exist, if not in the transactions of Adler Hong Kong then in the sales of similar merchandise by its competitors. Although this overstates the impact of the evidence, it is true that portions of the affidavit of the manager of Adler Hong Kong suggest the possibility that an export value may have existed for similar merchandise sold by competitors. This possibility is left open by the statement of Ms. Leung that "our competitors in Hong Kong generally add a 15 percent markup to their cost of jewelry for sales of similar types of merchandise to wholesalers for exportation to the United States."

Of course the mere fact that competitors sell for export to the United States does not mean that they do so in a manner which establishes an export value. Moreover, defendant earlier took pains to deprecate the value of Ms. Leung's affidavit for use as confirmation of the authenticity of the prices of Adler Hong Kong when those were being claimed to represent export value.[4] It is somewhat anomalous for the government to attack the affidavit with respect to its description of how the competitors set their prices and yet rely on the affidavit as support for the fact that competitors did sell similar merchandise in circumstances which generated an export value. Nevertheless the existence of sales for export of similar merchandise suggests that export value may yet possibly be the proper basis of appraisement for these articles. However, on the present state of the record the Court can only reach one conclusion and that is that the appraisement was erroneous. The correct appraisement remains an open question. It may still be export value based on the prices of other sellers or it may have to be United States value.

In these circumstances plaintiff asks the Court to exercise its power of remand under 28 U.S.C. 2643(b) and require the District Director at the Port of Honolulu to make another appraisement of the merchandise. Defendant argues that remand ought to be granted only for reasons similar to a rehearing or retrial, i.e., to rectify a serious flaw in the conduct of the original judicial proceeding. This rather restrictive standard however is inappropriate for remand which is intended, not to correct a defect in the judicial proceeding, but to aid in the proper completion of administrative decisions which have

---

[4] Defendant's brief, p. 10, footnote 3.

been proven to be incorrect. The legislative history[5] makes it clear that these powers were intended *inter alia* to allow the Court an alternative to dismissing the case of a plaintiff who had demonstrated that the administrative decision was incorrect but was unable to establish the correct result. The defendant will be given an opportunity to make a new determination as to the value and will then report the determination to the Court. The Court will then decide whether further judicial proceedings are required. It is therefore Ordered that this matter is remanded to the District Director at the Port of Honolulu for disposition in accordance with this opinion, the results to be reported to the Court within 120 days from the date of entry of this Order.

---

[5] H. Rep. No. 96-1235, 96th Cong., 2d Sess. 60-61 (1980).